RICHARD W. EPSTEIN (Fla. Bar No. 229091)
Richard.Epstein@gmlaw.com
Admitted Pro Hac Vice
HAAS A. HATIC (Fla. Bar No. 843989)
Haas.Hatic@gmlaw.com
Admitted Pro Hac Vice
REBECCA F. BRATTER (Fla. Bar No. 0685100)
Rebecca.Bratter@gmlaw.com
Admitted Pro Hac Vice
GREENSPOON MARDER, P.A.
Trade Centre South, Suite 700
100 W. Cypress Creek Road, Suite 700
Ft. Lauderdale, FL 33309
954-491-1120
954-343-6958 (facsimile)

Attorneys for Defendants
Global Client Solutions, LLC &
Rocky Mountain Bank and Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SANFRANCISCO DIVISION

| | |
|---|---|
| HAIDEE ESTRELLA, an individual, and ANGELICA ARITA, an individual, on behalf of themselves and all others similarly situated, and on behalf of the general public. | **Case No: CV-09-03156 SI** |
| Plaintiffs, <br> v. | **DEFENDANTS GLOBAL CLIENT SOLUTIONS' OPPOSITION RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| FREEDOM FINANCIAL NETWORK, LLC, a Delaware limited liability company; FREEDOM DEBT RELIEF, INC., a California corporation; FREEDOM DEBT RELIEF, LLC, a Delaware limited liability company; GLOBAL CLIENT SOLUTIONS, LLC; ROCKY MOUNTAIN BANK AND TRUST; ANDREW HOUSER; and BRADFORD STROH and DOES 1 through 100, | Date: April 9, 2010 <br> Time: 9:00 a.m. <br> Place: Courtroom 10 <br> Before: The Honorable Susan Illston |
| Defendants. | |

1

## TABLE OF CONTENTS

**Page**

I.    PREFACE ........................................................................................ 4

II.   PERTINENT FACTS ...................................................................... 5

III.  RULE 23: CLASS ACTIONS. ........................................................ 5

    A.    Rule 23(a) Requirements. ...................................................... 6

        1.    Numerosity. ................................................................. 6

        2.    Commonality. .............................................................. 7

        3.    Typicality. .................................................................. 14

        4.    Adequacy of Representation .......................................... 17

    B.    Rule 23(b) ........................................................................... 19

IV.   CONCLUSION ............................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Byes v. Telecheck Recovery Servs., Inc.,*
  173 F.R.D. 421 (D.C.La.1997) ...................................................................... 17

*Constantini v. Wachovia Mortgage FSB,*
  2009 WL 1810122, *3 (E.D. Cal. Jun. 24, 2009) ........................................ 9

*Dukes v. Wal-Mart, Inc.,*
  509 F.3d 1168, 1176 (9th Cir.2007) ............................................................ 5

*Evans v. IAC/Interactive Corp.,*
  244 F.R.D. 568, 574 (C.D.Cal. Apr.25, 2007) ........................................... 6

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ................. 5, 10

*Golden v. City of Columbus,*
  404 F.3d 950, 965 (6th Cir. 2005) .............................................................. 7

*Graphics Processing Units Antitrust Litig.,*
  253 F.R.D. 478, 489-90 (N.D.Cal.2008) .................................................. 16

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011, 1019 (9th Cir.1998) ............................................................ 6

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497, 509 (9th Cir.1992) ............................................................... 5

*Larry James Oldsmobile-Pontiac-GMC Truck Co. v. General Motors Corp.,*
  175 F.R.D. 234 (D.C.Miss.1997) .............................................................. 17

*Molski v. Gleich,*
  318 F.3d 937, 955 (9th Cir.2003) ............................................................. 17

*Savino v. Computer Credit, Inc.,*
  164 F.3d 81, 87 (2d Cir.1998) ................................................................... 17

*Susman v. Lincoln Am. Corp.,*
  587 F.2d 866, (7th Cir.1978) .................................................................... 18

*Wiener v. Dannon Co., Inc.,*
  255 F.R.D. 658, 668 (C.D.Cal.2009) .......................................................... 5

*Zinser v. Accufix Research Institute, Inc.,*
  253 F.3d 1180, 1189 (9th Cir.2001) ......................................................... 11

**GLOBAL CLIENT SOLUTIONS, LLC'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs fail in their Motion and Memorandum of Law in support of class certification[1] to demonstrate that a nationwide class action can be certified. As demonstrated below, Plaintiffs cannot establish each of the four required elements of Rule 23(a) nor can they establish that this case is appropriate for nationwide class treatment under Rule 23(b)(1) or (b)(2).

## I.   PREFACE

Plaintiffs sued five corporate entities (including GCS and RMBT) and two individuals seeking relief on behalf of a putative "class of debtors that have purchased regulated debt management services."[2]

In essence and by allegations made against the Defendants collectively,[3] Plaintiffs complain that they "purchased regulated debt management services" from Defendants[4] and that "the services sold [by the Defendants] are regulated under the Check Sellers, Bill Payers, and Proraters law found in sections 12000 *et seq.* of the California Financial Code." [5] Specifically Plaintiffs allege that "[t]he contractual services provided by the Defendants fall squarely within the definition of a Prorater [under Financial Code Section 12002.1]" and that "none of the defendants (sic) are licensed by the State of California."[6]

---

[1] [D.E. 102 & 102-1.].
[2] *See* Second Amended Class Action Complaint [D.E. 84 at ¶ 1.]
[3] [D.E. 84 *e.g.,* at ¶ 1.],
[4] [D.E. 84 *e.g.,* at ¶ 1.]
[5] [D.E. 84 e.g., at ¶ 3.]
[6] [D.E. 84 at ¶¶ 9-11.]

On these bases, Plaintiffs "seek relief for these violations under Business & Professions Code Section 17200, et seq. and the Consumer Legal Remedies Act."[7]

Now Plaintiffs seek to certify a nationwide class based on California law and comprised of "All consumers nationwide who paid defendants for debt reduction services...."[8] The proposed nationwide class cannot be certified for the reasons argued below.

## II. PERTINENT FACTS

GCS incorporates fully herein by reference RMBT's Opposition Response to Plaintiffs' Class Certification Motion, including facts and other matters set forth in Section II, "Pertinent Facts," including the supporting depositions, declaration and exhibits to each.

## III. RULE 23: CLASS ACTIONS.

Federal Rule of Civil Procedure 23 "provides district courts with broad discretion to determine whether a class should be certified. . . ."[9] A court may consider evidence that goes to the requirements of Rule 23 even if such evidence relates to the underlying merits of the case.[10] Because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action,"[11]

---

[7] [D.E. 84 *e.g.*, at ¶ 4.]

[8] [D.E. 102-1, p. 1:7-9.]

[9] *See Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 668 (C.D.Cal.2009) (citing *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir.2007) (internal citation omitted)).

[10] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992) (internal citations omitted).

[11] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

"a court must often look to evidence beyond the pleadings."[12] The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) is satisfied.[13]

As we show next, evidence that goes to the requirements of Rule 23 shows the named Plaintiffs are unable to satisfy each of the four requirements under Rule 23(a).

### A.    Rule 23(a) Requirements.

In considering whether to grant class certification, a court's "threshold task is to ascertain whether the proposed . . . class satisfies the requirements of Rule 23(a). . . ."[14] A court should not grant class certification unless it "is satisfied, after a rigorous analysis, that all of the requirements of Rule 23(a)" are met. [15] These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."[16]

### 1.    Numerosity.

In the Motion, Plaintiffs make a simple dismissive statement about numerosity, but completely fail to address the impracticability aspect of the requirement, which demonstrates why the (a)(1) requirement cannot be met, and a class cannot be certified.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While the numerosity requirement is very fact specific, the requirement of impracticability of joinder must be affirmatively and specifically addressed in the

---

[12] *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D.Cal. Apr.25, 2007) (internal citations omitted).
[13] *Id.*
[14] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).
[15] *Gen. Tel. Co. of Sw.*, 457 U.S. at 161, 102 S.Ct. 2364.
[16] *Gen. Tel. Co. of Sw.*, 457 U.S. at 156, 102 S.Ct. 2364 (internal citation and quotations omitted).

certification motion.[17] Plaintiffs, however, make no effort and simply assume that suggesting a number is sufficient to establish numerosity. This Court, however, cannot determine whether the class is appropriate based solely on the alleged number of class members, especially since Plaintiffs failed affirmatively and specifically to address the requirement of impracticability of joinder in the certification motion.

## 2.   **Commonality.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class...." Here Plaintiffs unwittingly demonstrate that there are no common questions of law, whether this requirement is construed "permissibly" as Plaintiffs argue, or not.[18] Each enumerated common question of law[19] confirms that Plaintiffs seek national application of California law, which creates at least two separate and distinct practical commonality problems that cannot be overcome, as we discuss next.

### (a)   *California's prorater law has no extra-territorial application.*

There is nothing in the California prorater law that gives it extraterritorial effect nor is it reasonable to infer such application from the language of the statute, its purpose, subject matter, or history.[20] The presumption against giving California law extraterritorial effect, therefore, applies in this case when considering whether California law governs the conduct allegedly attributed to GCS and RMBT that occurred *outside* California.[21]

---

[17] *See, e.g., Golden v. City of Columbus,* 404 F.3d 950, 965 (6th Cir. 2005).

[18] [D.E. 102-1, p. 19:18.].

[19] [D.E. 102, p. 19-20 (*e.g.,* "Whether Defendants violated the UCL and the CLRA.").].

[20] *See Norwest Mortgage, Inc. v. Superior Court,* 72 Cal. App. 4th 214, 225 (Cal. Ct. App. Apr. 28, 1999). *See also North Alaska Salmon Co. v. Pillsbury,* 162 P. 93, 94 (Cal. 1916).

[21] *Id.*

The presumption militates against California having an interest in regulating conduct occurring in a foreign jurisdiction or in certifying a nationwide class based on prohibitions and remedies found in California law.[22]

For example, in *Norwest Mortgage, Inc. v. Superior Court*,[23] the defendant mortgage company's relevant operating functions were conducted out of facilities in Iowa and Minnesota, not California.[24] On that basis, the California Court of Appeals vacated certification of a nationwide class, making clear that the UCL was not intended to govern conduct "occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California."[25] In so holding, *Norwest* reiterated the fundamental principle that statutes (such as the UCL) are not presumed to "regulate[] occurrences outside the state unless a contrary intention is clearly expressed," because such extraterritorial application raises profound constitutional concerns.[26]

The facts here are indistinguishable from those in *Norwest* and merit the same result. Here, RMBT and GCS provide banking services to certain clients of FDR. RMBT is headquartered in Colorado, and GCS is headquartered in Oklahoma. Neither RMBT nor GCS have any office or presence in California. Likewise, when RMBT and GCS provide bank accounts and banking services to clients of FDR, they do so outside of California.[27] Under *Norwest*, plaintiffs cannot assert a UCL claim on behalf of non-

---

[22] *Id.*

[23] 72 Cal. App. 4th 214, 225.

[24] *Id.* at 218.

[25] *Id.* at 220-25.

[26] *Id.* at 222, 225-26.

[27] *See* Hampton Depo. & McClure Depo.

California residents against any of the defendants in this case based on the out-of-state services provided by RMBT and GCS. The UCL simply does not reach that far.

Moreover, § 17200 of the Cal. Bus. & Prof. Code does not apply to any claim of the non-California residents under any circumstance and cannot be the basis for certifying a non-resident nation-wide class here. Nor can Plaintiffs rely on vague allegations of conspiracy with FDR[28] to extend the reach of California's UCL to a nationwide class. [29] Courts routinely refuse to certify a nationwide class, and to extend California law extraterritorially, on similar facts.[30]

In addition to the foregoing, GCS and RMBT are statutorily exempt from liability for the alleged underlying wrong, so neither can be held liable under § 17200 to California residents.[31] Section 12100 states, in pertinent part that:

> **This division does not apply to any of the following**:
>
> (a) **Any person, or his or her authorized agent, doing business** . . . under any law of this state or of the United States **relating to banks, trust companies** . . . .

---

[28] [D.E. 102-1 p. 1, 16.].

[29] *See Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005) (holding "the UCL cannot provide the basis for a duty owed by non-resident Defendants . . . to the Non-Resident Plaintiffs" based on claims of co-conspirator liability).

[30] *See Churchill Village, L.L.C. v. General Electric Co.*, 169 F. Supp. 2d 1119 (N.D. Cal. 2000) (the UCL "does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California" and where "extraterritorial application . . . raises significant due process concerns."); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 973 (Cal. Ct. App. Sept. 28, 2009) (nationwide class treatment inappropriate for UCL and CLRA causes of action).

[31] *See Constantini v. Wachovia Mortgage FSB*, 2009 WL 1810122, *3 (E.D. Cal. Jun. 24, 2009) (holding that a "plaintiff who fails to establish a violation of some other law also fails to allege that the business act in question is "unlawful" under the UCL" and further holding that the Defendants were statutorily exempt from the Fair Debt Collection Practices Act).

RMBT is a bank, and GCS is an agent of RMBT, and thus not covered by the statute. Indeed, in April 2006 the State of California, Department of Corporations found and decided that GCS does not engage in debt settlement negotiations.[32]

Whether considered under *Norwest* and its progeny or under the express statutory exemption,[33] a nationwide class cannot be certified under the causes of action named Plaintiffs assert here.

      **(b)**      ***Applying California law to nonresidents creates a significant and insurmountable choice of law problem.***

The majority of the members of the proposed class are residents of other U.S. states and Territories, and of other countries. Indeed, over the alleged class time period, there have been 45,980 individual SPA account holders located in the 50 states and in Armed Forces Africa, British Columbia, the District of Columbia, Guam, the Mariana Islands, Puerto Rico and the Virgin Islands.[34] Of the total number of account holders, only 8,305 were in California, just eighteen (18) percent of the total number who were working with FDR to settle their debts.[35] If these absent members are included in this

---

[32] *See In re: Desist and Refrain Order of: Nationwide Asset Services, Inc., and Universal Nationwide, LLC and Global Client Solutions, LLC*, Case No. 38300; OAH No.: N2005120755 at p. 9, ¶ 2 (April 28, 2006).

[33] Since class determination generally involves considerations that are enmeshed in the factual and legal issues comprising Plaintiffs' cause of action, the Court can consider the express statutory exemption here. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

[34] Hampton Depo. 87:5 & Ex. 9.

[35] Hampton Depo. 87:5 & Ex. 9.

putative California class the laws of multiple states and/or countries would potentially govern their claims, so there are no common questions of law.[36]

Many of the various states have, and some do not have, statutes addressing the activities of debt management or settlement companies, placing different and in some cases unique requirements on the debt settlement industry.[37] All states have separate consumer fraud statutes, and common law addressing the enforceability of contract provisions, for example, the enforceability of arbitration clauses. Because Plaintiffs seek a nationwide class, the laws of the state where each absent class member resides would govern that particular member's individual claims, even assuming the absent, non-resident class member has a claim.

Plaintiffs are wrong when they suggest that, because FDR's client *agreements* are governed by California law, it necessarily follows that claims of all putative class members, wherever they are located and regardless of the fact that the entered separate agreements with RMBT/GCS with a Colorado choice of law provision, are governed by California law.[38] To the contrary, the case law is clear that parties cannot simply choose to opt-out of another state's regulatory regime.[39]

---

[36]*Zinser v. Accufix Research Institute*, Inc., 253 F.3d 1180, 1189 (9th Cir.2001)(the Ninth Circuit has held that such variances in state law may overwhelm common issue of fact and destroy predominance.).

[37] *See* Epstein Dec. ¶ 6, Ex. E. Chart of State-by-State Statutory Citations.

[38] [D.E. 102-1 p. 2.].

[39] *See Brack v. Omni Loan Company, Ltd.*, 164 Cal. App. 4th 1312, 1324-25 (Cal. Ct. App. Oct. 16, 2008) (holding that parties cannot avoid fundamental policy choices of another state through choice-of-law clause); *Hall v. Superior Court*, 150 Cal.App.3d 411, 417 (1983) (same); *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 773 (1971) ("an agreement designating [a foreign] law will not be given effect if it would violate a strong [state] public policy . . . [or] 'result in an evasion of . . . a statute of the forum protecting its citizens'") (internal citation omitted).

11

Here, it is beyond dispute that the RMBT SPA has a Colorado choice of law provision and that other states (unlike California) have adopted statutes that expressly regulate the business practices of debt settlement companies and that impose different requirements than California law. Those statutes provide that parties cannot opt-out of their requirements through choice-of-law clauses. Consider these examples:

- *Colorado UDMSA*: "An agreement may not . . . (1) Provide for application of the law of any jurisdiction other than the United States and this state[.]" Colo. Rev. Stat. § 12-14.5-219(f)(1). "All rights and obligations specified in subsection (d) of this section and section 12-14.5-220 exist even if not provided in the agreement. A provision in an agreement that violates subsection (d), (e), or (f) of this section is void." Colo. Rev. Stat. § 12-14.5-219(g).

- *Delaware UDMSA*: "An agreement may not . . . (1) Provide for application of the law of any jurisdiction other than the United States and this State[.]" 6 Del. C. § 2419A(f)(1). "All rights and obligations specified in subsection (d) of this section and § 2420A of this title exist even if not provided in the agreement. A provision in an agreement which violates subsection (d), (e), or (f) of this section is void." 6 Del. C. § 2419A(g).

- *Rhode Island UDMSA*: "An agreement may not . . . (1) Provide for application of the law of any jurisdiction other than the United States and this state[.]" R.I. St. § 19-14.8-20(f)(1). "All rights and obligations specified in subsection (d) and § 19-14.8-20 exist even if not provided in the agreement. A provision in an agreement which violates subsection (d), (e), or (f) is void." R.I. St. § 19-14.8-20(g).

- *Utah UDMSA*: "An agreement may not . . . (a) provide for application of the law of any jurisdiction other than the United States and this state[.]" Utah code Ann. § 13-42-119(6)(a). "All rights and obligations specified in Subsection (4) and Section 13-42-120 exist even if not provided in the agreement. A provision in an agreement which violates Subsection (4), (5), or (6) is void." Utah code Ann. § 13-42-119(7).

- *Minnesota Debt Settlement Services Act*: "The following terms shall not be included in the debt management services agreement . . . (6) a waiver of any provision of this chapter or a release of any obligation required to be performed on the part of the debt management services provider; or (7) a mandatory arbitration clause or a clause selecting a law other than the laws of Minnesota under which the debt management services agreement or any other dispute involving the provision of debt management services is governed or enforced." Minn. Stat. § 332A.10(4).

- *Texas Consumer Debt Management Services*: "A provider may not include any of the following provisions in a disclosure related to debt management services or in a debt management services agreement . . . (4) a waiver of a provision of this subchapter." Tex. Fin. Code. Ann. § 394.21(c)(4).

Under California choice-of-law principles, the above-provisions foreclose Plaintiffs' argument that California law supplants the regulations of other states relating to the individual RMBT account agreements and the relationship between RMBT/GCS and the putative class simply because FDR's contracts with its clients might be governed by California law.[40] In any event, there is more than one contract at issue here; while FDR's agreements may look to California law, RMBT's customer agreements are governed by Colorado law. Nevertheless, and irrespective of any choice-of-law provision, it remains incumbent on the party seeking nationwide class certification to "identify [the] variations of applicable state law and to meaningfully demonstrate how a trial on the class causes of action can be conducted fairly and efficiently in light of those variations."[41] Given Plaintiffs' failure to address those variations, let alone demonstrate why nationwide application of California law is appropriate, they cannot meet their burden under Rule 23(b)(3) of showing that "the case is still manageable as a class action despite the application of the law of multiple jurisdictions."[42]

Even if, contrary to the facts, RMBT's and GCS's banking services occurred inside California, Plaintiffs are still required to conduct an "evaluation under traditional choice of law principles whether to apply California law or the laws of [each class

---

[40] *See Brack*, 164 Cal. App. 4th at 1324-25.

[41] *See Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 928 (Cal. 2001).

[42] *Zinser*, 253 F.3d at 1189.

member's] respective home states."[43] Under *Zinser*, Plaintiffs must "explain how each non-forum state's laws differ from California law, whether each non-forum state has an interest in having its law applied, or whether each non-forum state has an interest outweighing California's interest."[44] Putting aside Plaintiffs' utter failure to present any analysis on this issue – which, as shown above, is fatal to their Motion – Plaintiffs' efforts to assert California law claims on behalf of a nationwide class give rise to fundamental conflicts with competing state unfair competition law and debt settlement regulations.

As the foregoing shows, where the laws of various states will govern the class claims, the differing state laws inject significant manageability concerns and can prevent certification of the nationwide class.

### 3.    Typicality.

Here neither named Plaintiff can satisfy the typicality requirement, which requires that the claims be "reasonably coextensive with those of absent class members."[45] The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."[46] As discussed above, the claims against GCS and RMBT are predicated on the applicability of the California

---

[43] *Norwest*, 72 Cal. App. 4th at 225 n.13.

[44]  253 F.3d at 1188.

[45] *Dukes*, 509 F.3d at 1184 (quoting *Hanlon*, 150 F.3d at 1020).

[46] *Hanon*, 976 F.2d at 508 (internal citations omitted).

prorater law and rest singularly on a claim of misleading marketing and so are not typical.[47]

Neither Plaintiff identified a single marketing representation made by either GCS or RMBT to which they supposedly responded; neither Plaintiff identified a "fee" paid to RMBT. Moreover, since each received all their funds back after closing their accounts, neither complained that GCS/RMBT retained any funds in the account. Plaintiffs, therefore, suffered no injury. Furthermore, neither Plaintiff identified anything paid to either GCS or RMBT, neither said that GCS or RMBT was contracted to or "paid" to provide "debt reduction services," which is how the putative class is defined.

There is nothing to support that the claims are typical and/or coextensive with the absent class members who reside in the other states, territories and countries or those who had accounts at RMBT administered by GCS. Indeed, all that Estrella could say about this issue is that the putative class is defined as all the customers of FDR—not customers of either GCS or RMBT[48] who "didn't get any service I didn't get."[49] In this regard, she explained that she cancelled her agreement with FDR solely because the creditor calls continued, *i.e.,* she "didn't get the service that [FDR] promised."[50] She did not identify any issues with either GCS or RMBT. When asked whether her situation was necessarily the same as other members of the putative class she said "I don't know."[51]

---

[47] Estrella and Arita identify what they believe to be typical of the proposed class claim in these terms: each "responded to the marketing representations of defendants," each signed up for "prorater service," and "each paid substantial fees to the defendants[,] which were not fully refunded." [D.E. 102, p. 21:4-7.]

[48] Estrella Depo. 20:10.

[49] Estrella Depo. 18:24-19:1.

[50] Estrella Depo. 45:23-25 &121:6-8.

[51] Estrella Depo. 96:8.

Likewise, Arita never found anything unacceptable in the RMBT bank account arrangement.[52] She admitted she was satisfied with FDR until one creditor, Chase, sued her.[53] After Chase sued, her view of FDR services changed dramatically[54] and she voluntarily withdrew from the FDR program.[55] She also admits that the information on the FDR web site was accurate, and only became inaccurate in her view at the time that Chase sued her.[56]

The typicality requirement is used to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present. As the foregoing shows, a "court must ensure that the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented" and will be adequately pursued.[57] Such is not the case here: the named Plaintiffs claims differ from one another and so cannot be typical of the nationwide class they seek to represent.

---

[52] Arita Depo. 161:17-18.

[53] Arita Depo. 115:16-18.

[54] Arita Depo. 116:4.

[55] Arita Depo. 117:13

[56] Arita Depo. 125:19.

[57] *In re Graphics Processing Units Antitrust Litig.,* 253 F.R.D. 478, 489-90 (N.D.Cal.2008) (internal citation and quotations omitted) (holding that Rule 23(a)(3) typicality requirement was not satisfied where "the representative plaintiffs simply do not have the appropriate incentive to establish . . . violations with respect to all of the absent class members," as evidence needed to prove that defendants conspired to fix prices of products that named plaintiffs had purchased would not prove that defendants conspired to fix prices of products that unnamed class members had purchased).

### 4.   Adequacy of Representation

"This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel."[58] In order to assess the adequacy of the named representatives, courts have looked to factors such as their honesty, conscientiousness, and other affirmative personal qualities.[59] If the representative displays a lack of credibility regarding the allegations being made[60] or a lack of knowledge or understanding concerning what the suit is about[61] as is the instant case, then the court may conclude that Rule 23(a)(4) is not satisfied.

Here, as the discussion of the numerosity, commonality and typicality requirements shows, the named Plaintiffs are not adequate class representatives. As manifest in each named Plaintiffs' deposition, neither knew about the other, neither felt it necessary to coordinate with the other about the case or its progress, and neither could identify the other potential class members. Moreover, the depositions show that each

---

[58] *Dukes*, 509 F.3d at 1185 (citing *Hanlon*, 150 F.3d at 1020; *Molski v. Gleich,* 318 F.3d 937, 955 (9th Cir.2003)).

[59] *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir.1998) (upholding decision of inadequacy where proposed class representative lacked credibility as a result of his "differing accounts about the letters that form the very basis for his lawsuit");

[60] Plaintiff in consumer-credit action was an inadequate class representative, when plaintiff signed an affidavit stating that she understood each claim in the lawsuit and the duties as class representative despite deposition testimony showing that she did not understand, plaintiff had a past conviction for theft, and plaintiff did not know about a settlement offer that she made and counteroffer that defendant made, and she might not have known about another defendant's settlement offer, which was accepted. *Byes v. Telecheck Recovery Servs., Inc.*, 173 F.R.D. 421 (D.C.La.1997).

[61] When named plaintiff demonstrates so little knowledge of and involvement in the case that the class representative is unable to protect class interests from possibly competing class counsel interests, due-process concerns require finding of inadequacy of class representation. *Larry James Oldsmobile-Pontiac-GMC Truck Co. v. General Motors Corp.,* 175 F.R.D. 234 (D.C.Miss.1997).

mysteriously decided to seek out the class lawyers so that each could represent the proposed class and pursue a class action against the "defendants", but neither understands that she is to act and make decisions in the best interests of the entire class, must keep fully abreast of all proceedings, and may have to testify if the case goes to trial.

For example, Arita believes that the putative class is "all of those people that have been ripped off that are in my same situation."[62] She testified that she learned with the help of some "friends" looking on the internet "that more people are in [her] same situation,"[63] although she did not know the number of people or who they are[64] and had to admit, about the internet information: "I don't know if its true or not, but that's what I heard,"[65] "[friends] just told me. I don't even know if its accurate or not."[66] She freely admitted that she does not "care" about any other class member who may not feel "ripped off" or for class members that received that for which they had bargained.[67] Arita never spoke to Estrella and does not anticipate coordinating with her with respect to the representation of the putative class, nor does Arita believe it is necessary for her to work with Estrella regarding the representation of the class.[68] Arita did not know whether the proposed class includes those who have had all of their money refunded.[69]

---

[62] [Arita Depo. 21:6-7.]

[63] [*id.* 139:1-2 & 22-25, 140:1.]

[64] [*id.* 140:20.]

[65] [*id.* 142:23-24.]

[66] [*id.* 143:7-9.]

[67] [*id.* 25:25-26:5.]

[68] [*id.* 23:23 & 24:17.]

[69] [*id.* 26:23.] Additionally, each named Plaintiffs' adequacy in this case is undermined by the fact that FDR has tendered refunds being sought, which has been rejected. *See, e.g., Susman v. Lincoln Am. Corp.*, 587 F.2d 866 (7th Cir.1978) (The fact that defendant has tendered individual money damages to the named plaintiffs may raise

As the foregoing demonstrates, neither named Plaintiff is an adequate class representative.

### B.    Rule 23(b)

GCS incorporates fully herein by reference RMBT's Opposition Response to Plaintiffs' Class Certification Motion, including the each of the specific arguments set forth in the Section III pertaining to Rule 23(b).

### IV.    CONCLUSION

Based on the foregoing, Plaintiffs did not demonstrate the appropriateness of a nationwide class action on the claims asserted here, having failed to demonstrate each of the Rule 23(a) prerequisite requirements and the elements for either a Rule 23(b)(1) or (b)(2) class. Accordingly, Plaintiffs' Motion to certify a nationwide class must be denied.

---

a question as to the named plaintiffs' ability to represent fairly and adequately the class they seek to represent.)

Respectfully submitted,

February 26, 2010

LAGARIAS & BOULTER, LLP

/s/ Robert S. Boulter
ROBERT S. BOULTER (SBN 153549)

February 26, 2010

GREENSPOON MARDER, P.A.

/s/ Richard W. Epstein
RICHARD W. EPSTEIN
(FLA. BAR NO: 229091)
**(Admitted Pro Hac Vice)**
Richard.Epstein@gmlaw.com
HAAS A. HATIC
(FLA. BAR NO.: 843989)
**(Admitted Pro Hac Vice)**
Haas.Hatic@gmlaw.com
REBECCA F. BRATTER
(FLA. BAR NO: 0685100)
**(Admitted Pro Hac Vice)**
Rebecca.Bratter@gmlaw.com

Attorneys for Defendants GLOBAL
CLIENT SOLUTIONS, LLC & ROCKY
MOUNTAIN BANK & TRUST

G:\DOCS\LIT\14022\0009\RESP\49V2004.DOCX