IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAIDEE ESTRELLA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FREEDOM FINANCIAL,<br><br>　　　　Defendant.<br>_____/ | No. C 09-03156 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' UCL, CLRA, AND NEGLIGENCE CLAIMS AND STAYING ACTION ON PLAINTIFFS' CROA CLAIM** |

On June 24, 2011, the Court heard oral argument on defendants' motion to compel arbitration and stay action on plaintiffs' claims. Having considered the arguments of counsel and the papers submitted, and for good cause shown, the Court hereby GRANTS defendants' motion to compel arbitration of plaintiffs' Unfair Competition Law, Consumer Legal Remedies Act, and negligence claims. The Court STAYS action on the plaintiffs' Credit Repair Organization Act claim pending the outcome of *CompuCredit Corp. v. Greenwood,* — S. Ct. —, 2011 WL 220683.

**BACKGROUND**

Defendants Freedom Debt Relief, Inc. ("FDR"), Freedom Financial Network, LLC, Freedom Debt Relief, LLC, and FDR's Chief Executive Officers Andrew Housser and Bradford Stroh (collectively the "Network defendants") offer a debt reduction service. Upon enrolling in the program, which FDR's advertisements describe as "an innovative solution for consumers struggling with large debt burdens and who need debt relief," the consumer signs a contract and authorizes an automatic monthly transfer of funds from the consumer's existing bank account to a new Special Purpose Account

(SPA). After sufficient funds have accumulated in the client's SPA, FDR contacts the client's creditors and attempts to negotiate a settlement of the client's debt for less than is owed. Second Amended Complaint ("SAC") ¶ 10. The contractual agreement provides that clients will pay FDR a retainer fee and service fee equal to approximately 15% of their existing debt (10% for the service fee and 5% for the retainer fee). SAC ¶ 13. These fees are paid directly from the client's SPA; the retainer fees are deducted over the first four months and the service fees are deducted over the following fifteen months. SAC ¶ 13.

On the basis of these and other allegations, plaintiffs plead four causes of action against defendants: (1) unfair competition in violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200; (2) violation of the federal Credit Repair Organization Act (CROA), 15 U.S.C. § 1679b; (3) violation of California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750 et seq.; and (4) negligence in violating California's "prorater" statute, Cal. Fin. Code § 12315.1. SAC ¶¶ 55-75. The claims are described in more detail in the Court's order certifying a class action, which was issued June 25, 2010. Order Granting Pl. Mot. For Class Cert., Doc. 134.

The fourth claim and part of the first claim are premised on the allegation that defendants are proraters, as defined by California's prorater statute. Cal. Fin. Code §§ 12000 to 12404. The parties submitted cross-motions for summary adjudication on whether FDR qualifies as a prorater under Cal. Fin. Code § 12002.1. The question of whether FDR is a prorater was critical: if FDR were found <u>not</u> to be a prorater, the plaintiffs' negligence claim and third UCL claim would be eviscerated, but if FDR were found to be a prorater, the plaintiffs would be able to establish the grounds for their third UCL claim, as well as establish a framework for making their other UCL claims and their negligence claim. The Court denied both the plaintiffs' motion for summary judgment and the defendants' motion for either summary judgment or summary adjudication on the issues on March 14, 2011.

2

The contract the plaintiffs signed with FDR also includes an arbitration clause. Section 9 of the contract, the "Arbitration of Dispute" provision, in all capital letters, starts at the bottom of the second page of the contract and states:

> IN THE EVENT OF ANY CONTROVERSY, CLAIM OR DISPUTE BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF, INCLUDING THE TERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE DETERMINED BY ARBITRATION IN SAN FRANCISCO, CALIFORNIA OR IN THE COUNTY IN WHICH THE CONSUMER RESIDES, IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA FOR AGREEMENTS TO BE MADE IN AND TO BE PERFORMED IN CALIFORNIA. THE PARTIES AGREE, THE ARBITRATION SHALL BE ADMINISTERED BY THE AMERICAN ARBITRATION [Sic] ("AAA") PURSUANT TO ITS RULES AND PROCEDURES AND AN ARBITRATOR SHALL BE SELECTED BY THE AAA. THE ARBITRATOR SHALL BE NEUTRAL AND INDEPENDENT AND SHALL COMPLY WITH THE AAA CODE OF ETHICS. THE AWARD RENDERED BY THE ARBITRATOR SHALL BE FINAL AND SHALL NOT BE SUBJECT TO VACATION OR MODIFICATION. JUDGMENT ON THE AWARD MADE BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION OVER THE PARTIES. IF EITHER PARTY FAILS TO COMPLY WITH THE ARBITRATOR'S AWARD, THE INJURED PARTY MAY PETITION THE CIRCUIT COURT FOR ENFORCEMENT. THE PARTIES AGREE THAT EITHER PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY IN HIS/HER OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OF MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF REPRESENTATIVE OR CLASS PROCEEDINGS. THE PARTIES SHALL SHARE THE COST OF ARBITRATION, INCLUDING ATTORNEY'S FEES, EQUALLY. IF THE CONSUMERS SHARE OF THE COST IS GREATER THAN $1,000 (ONE-THOUSAND DOLLARS), THE COMPANY WILL PAY THE CONSUMERS SHARE OF COSTS IN EXCESS OF THAT AMOUNT. IN THE EVENT A PARTY FAILS TO PROCEED WITH ARBITRATION, UNSUCCESSFULLY CHALLENGES THE ARBITRATOR'S AWARD, OR FAILS TO COMPLY WITH THE ARBITRATOR'S AWARD, THE OTHER PARTY IS ENTITLED TO COSTS OF SUIT, INCLUDING A REASONABLE ATTORNEY'S FEE FOR HAVING TO COMPEL ARBITRATION OR DEFEND OR ENFORCE THE AWARD.

Bretan Decl., Exh. C.

On May 16, 2011, defendants filed a Motion to Compel Arbitration and Stay Action Pursuant to the Federal Arbitration Act. The Motion to Compel Arbitration was filed in response to the U.S. Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, issued April 27, 2011, which held that the Federal Arbitration Act (FAA) preempts California's *Discover Bank* rule and

prohibits states from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures. *Concepcion*, 131 S. Ct. at 1744, 1753.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute but must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-478 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the court must order the parties to arbitration in accordance with the terms of their agreement. 9 U.S.C. § 4.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. *See id.*; *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Accordingly, the Court

4

reviews plaintiff's arbitration agreement in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, and considers the enforceability according to the laws of the state of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

## DISCUSSION

In *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (Cal. 2005), the California Supreme Court held that when class-action waivers are

> found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Id.* at 162 (quoting Cal. Civil Code § 1668).

In *Concepcion,* the Supreme Court said that the "overarching purpose" of the FAA is to "ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, S. Ct. 131 at 1748. Because requiring the availability of classwide arbitration "interferes with fundamental attributes of arbitration," the Court said the requirement is inconsistent with the FAA. *Id.* In support of its argument that a change from bilateral arbitration to class-action arbitration is "fundamental," the Court cited the loss of arbitration's informality, making the "process slower, more costly, and more likely to generate procedural morass," and an increased risk to defendants. *Id.* at 1750-52. While the *Concepcion* dissent argued that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the cracks of the legal system, the Court said that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. The Court acknowledged that States are still able to take action to address concerns about adhesion contracts, providing as an example a requirement that class-action waivers be highlighted in arbitration agreements, but said "such steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 1750 n. 6.

5

Twenty-seven months after this case was brought, but only nineteen days after the Supreme Court's ruling in *Concepcion*, defendants moved to compel arbitration. They argue that they are now, for the first time, entitled to have the plaintiffs' claims decided in arbitration on an individual basis.

Plaintiffs oppose the motion to compel arbitration on several grounds. They argue that defendants waived their right to arbitrate by litigating the case for over two years. They also argue that the arbitration clause does not govern claims against several of the defendants and that the clause does not govern the unlicensed prorater claim against any defendant. Plaintiffs also argue that a CROA claim is not arbitrable.

## I.   Waiver

In *Fisher v. A.G. Becker Paribas, Inc.*, the Ninth Circuit held that a party seeking to prove waiver of a right to arbitration must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher*, 791 F.2d 691, 694 (9th Cir. 1986). Because waiver of a contractual right to arbitration is not favored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.*

In *Fisher*, the Ninth Circuit examined whether a defendant's decision not to file a motion to compel arbitration prior to the Supreme Court's rejection of the intertwining doctrine – which held that when it was impractical or impossible to separate nonarbitrable from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over federal securities claims – constituted wavier. *See id.* at 695. Prior to the Supreme Court's decision, the Ninth Circuit had approved of the intertwining doctrine and had said in *De Lancie v. Birr, Wilson & Co.*, 648 F.2d 1255 (9th Cir. 1981), that arbitration should be denied where common law claims are intertwined with securities law violations. *Id.* at 693. The defendant relied on the doctrine and the Ninth Circuit's decision in *De Lancie* in deciding not to file a motion to compel arbitration because it would have been "futile" prior to the Supreme Court's ruling. *Id.* The Ninth Circuit concluded that there was no waiver because the defendant was entitled to rely on the intertwining doctrine and that court's prior decisions in deciding that it would be futile to file a motion to compel arbitration. *Id.* Because the arbitration

6

agreement was unenforceable before the Supreme Court's decision, the court held that the defendant did not act inconsistently with a known existing right to compel arbitration and had not waived the right to arbitration. *Id.* at 697.

Plaintiffs argue that defendants waived the right to arbitrate by not seeking to arbitrate earlier and instead electing to litigate through class certification. However, this case is similar to *Fisher* because, prior to the Supreme Court's decision in *Concepcion*, it would have been futile for the defendants to file a motion to compel arbitration: prior to *Concepcion*, California and Ninth Circuit law held that similar arbitration agreements with class action waivers were unconscionable and unenforceable. *See Discover Bank,* 36 Cal. 4th 148; *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir. 2007).

Plaintiffs try to distinguish their case from *Fisher* by saying that in *Fisher* the right to arbitration did not exist at <u>all</u> under controlling authority, whereas here the right to arbitration always existed because the "*Discover Bank* rule held that contractual provisions preventing class-wide arbitration were unenforceable; not that arbitration clauses were unenforceable." Plaintiffs' Opp. to Mot. to Compel Arbitration p. 6. However, the Supreme Court has held that "'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental.'" *Concepcion*, 131 S. Ct. at 1750 (quoting *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758, 1776 (2010)). This "fundamental" shift in how the arbitration would occur means that defendants did not act inconsistently with a known existing right to compel arbitration. Plaintiffs have failed to demonstrate that defendants waived their right to arbitration under the *Fisher* test.

## II.   Scope: Defendants and Claims

Plaintiffs argue that the arbitration clause is inapplicable because it is limited in scope and does not apply to claims that arise before consumers see the debt settlement agreement (i.e. claims about deceptive and misleading business practices) or to the issue of whether defendants were properly licensed as praters. However, this argument is contrary to arguments previously made by plaintiffs and to the law of the case. When plaintiffs moved for class certification, they argued that the choice-of-law provision in the contract applied to all of their state law claims. The Court determined that <u>all</u> of

7

"plaintiffs' claims fall within the scope of the contract." Order Granting Plaintiffs' Mot. for Class Cert. p. 7. The arbitration clause covers "any controversy, claim or dispute . . . arising out of or relating to" the contract. Bretan Decl., Exh. C. The choice-of-law provision states that the "Agreement is governed by the laws of the state of California." *Id.* The arbitration clause applies to all of plaintiffs' claims.

The plaintiffs also argue that the arbitration clause is inapplicable because it only applies to FDR, LLC, **not** to Stroh, Houser, or FFN, LLC, or FDR, Inc. However, plaintiffs' argument contradicts their earlier claims about defendants. When defendants tried to assert that FDR is the only defendant that offered debt settlement services during the class period, the plaintiffs offered evidence that the defendant companies are "all joint venturers and/or alter egos of each other." Pl. Opp. at 2; *see* Order Denying Cross-Mot. for Summary Judgment at 1, 13. On that basis, the Court refused to grant defendants' motion for summary adjudication with respect to all Network defendants other than FDR. Order Denying Cross-Mot. for Summary Judgment at 13-14. The arbitration clause applies to all of the defendants.

## III. CROA Claims

Plaintiffs claim the arbitration clause is inapplicable because it does not apply to federal CROA claims. Plaintiffs' Opposition to Mot. To Compel Arbitration p. 1-2, 11. Defendants submit that the CROA claim should be arbitrated. Mot. To Compel Arbitration p. 11. However, defendants admit that the plaintiffs' CROA claim is "arguably not subject to arbitration," and urge the Court to, "at the very least," stay the CROA claim. Reply Mem. Iso Mot. To Compel Arbitration and Stay Action p. 14-15.

On May 2, 2011, the Supreme Court granted *certiorari* in the matter of *CompuCredit Corp. v. Greenwood,* — S. Ct. —, 2011 WL 220683, to decide whether CROA claims are arbitrable and to resolve a split in the Circuits on this issue. *See* Mot. To Compel Arbitration p. 11; *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007) (CROA claims are arbitrable); *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249 (11th Cir. 2009) (CROA claims arbitrable); *but see Greenwood v. CompuCredit Corp.*, 615 F.3d 1204 (9th Cir. 2010) (CROA claims non-arbitrable).

The Court hereby orders action on the plaintiffs' CROA claim STAYED pending the outcome in *CompuCredit Corp. v. Greenwood*. Parties are ordered to file a joint status update with the Court

8

1 **within fifteen days of the resolution in *Compucredit*.**

### IV.    Notice to Class

On June 25, 2010, the Court certified a class action. Notice of this litigation has been issued to class members and the opt-out period has passed. Order Regarding the Form of Class Notice and Notice Plan p. 2, Doc. 149. Members of the class must now be notified of this Order. Parties are hereby ordered to submit a joint proposal to the Court **within fifteen days from the date of this Order** detailing how appropriate notice will be issued to the class.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the defendants' motion to compel arbitration of the plaintiffs' UCL, CLRA, and negligence claims. The court STAYS action on the plaintiffs' CROA claim pending the outcome in *CompuCredit Corp. v. Greenwood*. (Doc. 197.) Parties are ordered to submit a joint status update to the Court **within fifteen days from the date of the resolution in *CompuCredit*.** Parties are also ordered to submit to the Court, **within fifteen days from the date of this Order**, a joint proposal detailing how notice of this Order will be issued to members of the class.

**IT IS SO ORDERED.**

Dated: July 5, 2011

SUSAN ILLSTON
United States District Judge