IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAIDEE ESTRELLA, an individual, and ANGELICA ARITA, an individual, BEVERLY HALL, an individual, DALE MAYS, an individual, on behalf of themselves and others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM FINANCIAL NETWORK, LLC; FREEDOM DEBT RELIEF, INC.; FREEDOM DEBT RELIEF, LLC; GLOBAL CLIENT SOLUTIONS, LLC; ROCKY MOUNTAIN BANK AND TRUST; ANDREW HOUSSER; and BRADFORD STROH<br><br>Defendants.<br>_____ / | No. CV 09-03156 SI<br><br>**ORDER GRANTING MOTION TO COMPEL AND DECERTIFY THE CLASS; GRANTING IN PART PRELIMINARY APPROVAL OF SETTLEMENT** |

Before the Court are two motions. The first is a motion by defendants Freedom Debt Relief, Inc. ("FDR"), Freedom Financial Network, LLC, Freedom Debt Relief, LLC, and FDR Chief Executive Officers Andrew Housser and Bradford Stroh (collectively, "the Freedom Defendants") to compel named plaintiffs Beverly Hall and Dale Mays to arbitration, and to decertify the class in light of that motion. The second is plaintiffs' motion to preliminarily approve a settlement between plaintiffs, Global Client Solutions ("GCS") and Rocky Mountain Bank & Trust ("RMBT"). A hearing was held on the motions on January 21, 2011. After considering the papers and the parties' arguments, and for good cause shown, the Court rules as follows.

**BACKGROUND**

The subject of this lawsuit is the debt reduction program offered by the Freedom Defendants. The operative version of plaintiffs' complaint is the Third Amended Complaint ("TAC"), filed on October 7, 2011 by named plaintiffs Haidee Estrella, Angelica Arita, and newly added plaintiffs Dale Mays and Beverly Hall, on behalf of themselves and "[a]ll consumers nationwide who paid defendants for debt reduction services during the four years preceding the filing of the complaint." TAC ¶ 49. The complaint alleges four causes of action: (1) unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (2) violation of the federal Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679b; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; and (4) negligence in violating California's "prorater" statute, Cal. Fin. Code § 12315.1. TAC ¶¶ 58-78.

Estrella's and Arita's contracts, signed with FDR in 2008, include an arbitration clause with a class action waiver. Order Granting Defs.' Mot. to Compel Arbitration at 3 (the "Arbitration Order"). On July 5, 2011, in the wake of the Supreme Court's decision in *AT&T Mobility v. Concepcion,* 131 S.Ct. 1740 (2011)[1], the Court granted the defendants' motion to compel arbitration of the plaintiffs' UCL, CLRA, and negligence claims and stayed the action on the plaintiffs' CROA claim pending the outcome in *CompuCredit Corp. v. Greenwood*, - S. Ct. -, 2011 WL 220683.[2]

Following the Court's July 5th order compelling arbitration, plaintiffs discovered that contracts signed by class members who enrolled with FDR between 2004 and 2007 did not include a class action waiver in the arbitration clause. Pls.' Mot. to Amend at 2. Two such plaintiffs are Dale Mays ("Mays") and Beverly Hall ("Hall"). Plaintiffs sought leave to amend their complaint in order to add Mays and Hall as class representatives, which the Court granted. *See* Order Granting Pls.' Leave to Amend at 3-4.

---

[1] Prior to *Concepcion*, the controlling law in California was *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (Cal. 2005), which rendered class action waivers in consumer contracts void as unconscionable. *Concepcion* expressly abrogated the *Discover Bank* rule.

[2] On May 2, 2011, the Supreme Court granted certiorari in the matter of *CompuCredit Corp. v. Greenwood*, 13 S. Ct. 2874, 2011 WL 220683, to decide whether CROA claims are arbitrable and to resolve a split in the Circuits on this issue. Order Granting Mot. to Compel Arbitration at 8. On January 10, 2012, the Supreme Court decided the issue, holding that CROA claims are in fact arbitrable. *CompuCredit Corp. v. Greenwood*, 2012 WL 43514.

On October 25, 2011, the Freedom Defendants again moved to compel arbitration, this time with respect to the newly added plaintiffs. Defs.' Mot. to Compel at 1. The Freedom Defendants are also requesting that the Court stay this action and decertify the class in light of the sought arbitration. *Id.* Plaintiffs filed an opposition on November 18, 2011, arguing that FDR waived its right to compel arbitration by litigating the case in this Court over the past three years. Pls.' Opp. at 6-14. In the alternative, plaintiffs request that even if the Court grants the Freedom Defendant's motion to compel, the Court not decertify the class until the arbitrator decides whether plaintiffs' arbitration claims may be pursued on a class basis.

Meanwhile, the plaintiffs reached a settlement with defendants GCS and RMBT. Plaintiffs filed a motion for preliminary approval of that class settlement on December 6, 2011. The Freedom Defendants opposed the motion, arguing that in light of the instant decertification motion, it would be improper for the other parties to create a settlement fund that may be used for litigation against the Freedom Defendants. The Court stayed decision on that motion until it resolved the merits of the instant motion to compel and decertify. *See* Order re: Mot. For Prelim. Approval, at 1-2.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. In determining whether to issue an order compelling arbitration, a court may not review the merits of the dispute but must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a

3

transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the court must order the parties to arbitration in accordance with the terms of their agreement. 9 U.S.C. § 4.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. *See id.*; *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Accordingly, the Court reviews plaintiff's arbitration agreement in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, and considers the enforceability according to the laws of the state of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

**DISCUSSION**

**I.     Motion to Compel**

Defendants move to compel Hall and Mays to arbitration, because Hall and Mays signed agreements containing an arbitration provision, and their claims against the Freedom Defendants as set forth in the TAC are within the scope of those agreements. Def.'s Mot. at 2. As an initial matter, the Court agrees that Hall's and Mays's contracts are subject to arbitration. Except for the absence of class action waivers, they have nearly identical agreements as plaintiffs Estrella and Arita, both of whom this Court ordered to arbitration in its previous Arbitration Order. *See* Arb. Order at 9.

As in their prior opposition to defendants' (successful) motion to compel Estrella and Arita, plaintiffs argue that defendants have waived their right to arbitration. Plaintiffs point to the fact that the case was already two and a half years old when the Freedom Defendants initially move to compel. Pl.'s

4

Opp. at 1. According to plaintiffs, the Freedom Defendants "more than substantially invoked the machinery of litigation. It pulled out all the stops on discovery and litigated venue, opposed class certification, tried for an interlocutory appeal, and moved for summary judgment." Pl.'s Opp. at 7. The parties spend the bulk of their briefs addressing plaintiffs' waiver claim.

In *Fisher v. A.G. Becker Paribas, Inc.*, the Ninth Circuit held that a party seeking to prove waiver of a right to arbitration must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher*, 791 F.2d 691, 694 (9th Cir. 1986). Because waiver of a contractual right to arbitration is not favored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (*quoting Belke v. Merrill Lynch*, 693 F.2d 1023, 1025 (11th Cir. 1982)).

In its Arbitration Order, the Court rejected plaintiffs' waiver argument with respect to the original plaintiffs, because it found that the Supreme Court's ruling in *Concepcion* had changed the legal landscape such that the Freedom Defendants had not acted inconsistently with a known right to compel arbitration. Arb. Order at 7. Prior to *Concepcion*, the express class action waivers in Estrella's and Arita's agreements were rendered void by California's *Discover Bank* rule. *Id.* When the Supreme Court abrogated that rule in *Concepcion*, it resuscitated the class action waivers in the plaintiffs' agreements. This created a fundamental shift in the nature of the arbitration that the Freedom Defendants faced when they moved to compel - a shift from class to bilateral arbitration. Because of that fundamental shift, the Freedom Defendants had not acted inconsistently with a known right to compel when they failed to so move throughout the prior two years of litigation.

A different question is presented here. The newly added plaintiffs, Hall and Mays, signed contracts that were silent as to class litigation. Plaintiffs argue that they were therefore not affected by *Concepcion*, and as such "there was no reason why FDR *could not* have sought arbitration at an earlier date." Pl's Opp. at 12 (emphasis in original).

The Court disagrees, for a simple factual reason. Hall and Mays were not the named plaintiffs suing the Freedom Defendants until the recently filed Third Amended Complaint. On July 19, 2011, in the wake of the Court's Arbitration Order, plaintiffs filed their motion to amend the Second Amended Complaint to add Hall and Mays as class representatives. The next day, on July 20, 2011, defendants

5

demanded that Hall and Mays submit their claims to arbitration "in accordance with their respective agreements with Freedom Debt Relief, LLC." Bretan Decl., Ex. A (July 20, 2011 Letter from Defense Counsel to Plaintiffs' Counsel). Plaintiffs present no authorities to support a claim that the Freedom Defendants should have been required to previously compel absent plaintiffs with a different contract to arbitration, despite the fact that they were, in fact, absent. Indeed, at the certification stage, plaintiffs argued (as they must) that original named plaintiffs Estrella and Arita were typical of the class, an argument the Freedom Defendants vigorously opposed. *See* Fed. R. Civ. P. 23(a)(3); Class Cert. Order at 14-17. It would be incongruous to now penalize Freedom Defendants for not having moved to compel absent class members who held contracts different from those of the named class representatives that plaintiffs themselves argued were typical of the class.

The Court finds that Freedom Defendants did not act inconsistently with a known existing right to compel arbitration with respect to Hall and Mays. *See Fisher*, 791 F.2d 691, 694 (9th Cir. 1986). As plaintiffs present no other arguments as to why the agreements are not subject to arbitration, Defendants' motion to compel is GRANTED.

## II. CROA Claims

Following the briefing for the instant motion, the Supreme Court decided a pending issue in this case. In its Arbitration Order, the Court ordered all of plaintiffs' claims to arbitration except for their CROA claims, which were stayed pending the outcome of the Supreme Court's decision in *CompuCredit*. The question presented to the Supreme Court was whether CROA claims are arbitrable. The Supreme Court recently answered that question in the affirmative. *See CompuCredit Corp. v. Greenwood*, 2012 WL 43514, at *6 (Jan. 10, 2012). Plaintiffs' CROA claims therefore fall within the ambit of the Court's Arbitration Order. The Court lifts the stay on Estrella's and Arita's CROA claims and orders those to arbitration as well.

## III. Decertification

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(c), an order certifying a class "may be altered or amended before final judgment." A district court retains the "flexibility to address problems

6

with a certified class as they arise, including the ability to decertify." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhilips Co.*, 593 F.3d 802, 809 (9th Cir. 2010). The party seeking decertification must show that the class no longer meets Rule 23's certification requirements. *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007). Doubts should be resolved in favor of certification. *Id.* at 1154.

Defendants contend that certification is no longer warranted because the class representatives are obligated to arbitrate their claims. Def.'s Mot. at 19; *citing In re: Apple & AT & T Mobility Antitrust Litigation*, 2011 WL 6018401, at *4, n. 14 (Dec. 1., 2011) (Ware, C.J.) ("After *Concepcion*, a number of District Courts, including several in this District, have granted similar motions brought by [defendant] to compel arbitration and decertify classes that had been certified pre-*Concepcion*.") The Court agrees. Plaintiffs offer no substantive arguments that Rule 23 continues to apply to the class. Instead, they argue that the Court should deny decertification at the present time, and instead wait for an arbitrator's decision as to whether the plaintiffs can proceed in arbitration as a class. They argue that because the Court may review that decision under American Arbitration Association Rules on Class Arbitration, *see* Treglio Decl., Ex. 1., it would not be prudent to decertify now, particularly because sending multiple notices to the class would be "confusing [and] chaotic." Pl.'s Opp. at 14.

The plaintiffs do not offer, nor can the Court find, any authority allowing a Court to stay a decision on decertification until it reviews a future arbitrator's potential ruling on whether arbitration may proceed as a class. Instead, the weight of authority holds that "decertification is appropriate in light of changes in the law" that make it no longer proper for a class to be maintained. *Labrador v. Seattle Mortg. Co.*, 2010 WL 3768378, at *3 n.5 (N.D. Cal. Sept. 22, 2010) (Conti, J.); *see also In re: Apple Antitrust Litigation*, 2011 WL 6018401, *4, n. 14. Here, the class is bereft of representatives, and therefore can no longer meet the requirements of Rule 23. The Freedom Defendants motion to decertify the class is therefore GRANTED.

### IV. Motion for Preliminary Approval of Settlement

Prior to the Court's Arbitration Order, plaintiffs reached a settlement with defendants GCS and

7

RMBT.[3] Plaintiffs filed a motion for preliminary approval of that class settlement on December 6, 2011. The Freedom Defendants opposed the motion, arguing that in light of the instant decertification motion, it would be improper for the other parties to create a settlement fund that may be used for litigation against the Freedom Defendants. The Court stayed decision on that motion until it resolved the merits of the motion to compel/decertification. *See* Order re: Motion For Prelim. Approval, at 2. As described above, the Court has resolved the decertification motion in favor of the Freedom Defendants. The Court will therefore address the motion for preliminary approval here.

Under the terms of the settlement, GCS and RMBT will pay $500,000.00 into a settlement fund "for all claims, costs, expenses and attorneys' fees as set forth in Paragraph 4." *See* Talley Decl., Ex. A, ¶ 3 (the "Settlement Agreement"). Paragraphs 4 and 5 address the use of the settlement fund:

> ¶ 4: **Settlement Fund or Cy Pres Distribution**. RMBT and Global will pay the Available Amount on the Payment Date into a "Settlement Fund" to be held in escrow by Rust Consulting, Inc. Concurrent with the parties' application to the Court seeking approval of the Settlement, Class Counsel may petition the Court to seek reimbursement from the Settlement Fund for the reimbursement of past litigation expenses. As the litigation proceeds, Class Counsel shall be permitted to make further requests to the Court for the reimbursement of litigation expenses.
>
> ¶ 5: With respect to all funds remaining in the Settlement Fund after the payment of litigation expenses, they shall be apportioned as follows: Provided Plaintiffs either a) settle with FDR prior to trial or b) obtain judgment against FDR whether by motion or at trial, all amounts remaining in the Settlement Fund will be released for distribution to the Class in accordance with the claims procedure established in either the Plaintiffs' settlement agreement with FDR, if any, or the final judgment against FDR. If Plaintiffs settle with FDR or procure a judgment against FDR, Class Counsel's application for fees and costs shall be in the form and amounts (if any) provided for by any settlement agreement with or judgment against FDR. If Plaintiffs do not settle with or prevail at trial against FDR: a) Class Counsel may apply for fees and costs to be paid from the Settlement Fund at the time and in the manner provided by Fed. R. Civ. P. 23; and b) the Available Amount, less administrative costs of associated [sic] with class notice and attorneys' fees and costs allowed to the Settlement Class Counsel by the Court, devolves to a *cy pres* fund . . .

Before approving a settlement, the court must hold a hearing and find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Review of a proposed settlement generally

---

[3]As the Court described in its motion granting class certification, approximately 95% of consumers who enrolled in FDR's program opened a "Special Purpose Account" with RMBT. *See* Class Cert. Order at 2. GCS acted as an agent for RMBT and is the party that facilitated the release of clients' funds to both the creditors and to FDR itself. *Id.*

8

proceeds in two stages, a hearing on preliminary approval and a final fairness hearing. *See* Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004). In determining whether a settlement is fair, reasonable, and adequate, a court must balance several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir.1992) (*citing Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982)).

With respect to the amount of settlement, the Court finds that $500,000 is a fair, reasonable, and adequate amount. The settlement amount must be considered in light of the strength of plaintiffs' case. *Id.*; *see also In re: HP Inkjet Printer Litigation*, 2011 WL 1158635, at *7 (N.D. Cal. Mar. 29, 2011) (finding that despite "evident problems with the proposed settlement," the weakness of plaintiffs' case counseled approval). In consideration of the prior two years of litigation, the Court agrees that plaintiffs' case has many non-trivial weaknesses with respect to GCS and RMBT. While the Court certified the same class for the claims against both GCS/RMBT and the Freedom Defendants, GCS/RMBT engaged in far different behavior than the Freedom Defendants - differences that endow GCS and RMBT with unique factual and statutory defenses. The Court therefore agrees that the amount of settlement is adequate.

However, the Court has concerns with the proposed distribution of the funds. As currently structured in the Settlement Agreement, the funds are poised to benefit largely (if not entirely) class counsel, not the class. As it stands, the current architecture of the agreement rests any future benefit to the class on a victory over, or settlement with, the Freedom Defendants. Until that uncertain outcome, it appears class counsel will be petitioning the Court for receipt of funds as reimbursement of past and future litigation expenses.

At oral argument, plaintiffs and GMC/RMBT's counsel advised that given the Court's concerns, the appropriate interim measure is to approve the settlement insofar as GCS and RMBT make a payment

9

into a settlement fund.[4] Plaintiffs will then submit proposed usage of the funds either prior to their motion for class arbitration (to be made with the arbitrator), or they will wait until they know the outcome of that motion. The Court agrees with this initial measure, and GRANTS preliminary approval of payment of $500,000.00 from GCS and RMBT into a settlement fund. Plaintiffs must file within 15 days either a proposed usage of that fund that mitigates the Court's concerns as set forth above, or inform the Court that plaintiffs intend to wait until the arbitrator decides the outcome of their motion for class arbitration.

## CONCLUSION

The Freedom Defendants' motion to compel arbitration of Hall's and Mays's claims and decertify the class with respect to the Freedom Defendants is GRANTED. The Court also ORDERS all plaintiffs' (including Estrella's and Arita's) CROA claims to arbitration. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, the Court STAYS this action pending plaintiffs' arbitration.

The Court GRANTS IN PART plaintiffs' motion for preliminary approval of settlement, limited to creation of a settlement fund as described above.

The parties are ordered to submit to the Court, **within fifteen days from the date of this Order**, a joint proposal detailing how notice of this Order will be issued to members of the class.

**IT IS SO ORDERED.**

Dated: January 24 , 2011

SUSAN ILLSTON
United States District Judge

---

[4] At oral argument, counsel for GMC and RMBT represented to the Court that it does not matter to his clients how the settlement funds are used.